687 S.E.2d 41

**In the Matter of an ANONYMOUS MEMBER OF the SOUTH CAROLINA BAR, Respondent.**

No. 26752.

Supreme Court of South Carolina.

Heard Dec. 1, 2009.

Decided Dec. 21, 2009.

134

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Desa Ballard, of West Columbia, for Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Commission on Lawyer Conduct (the Commission) investigated allegations involving two methods used by Respondent to promote his services as a real estate attorney. A Hearing Panel of the Commission found no misconduct and recommended dismissal of the first allegation involving his distribution of discount coupons for attorney's fees to realtors and lenders. In the second allegation, which involved using forms of the words "expert" and "specialist" in the attorney biographies on his website, the Hearing Panel found Respondent had violated Rule 7.4(b) of the South Carolina Rules of Professional Conduct (RPC), Rule 407, SCACR by using these words when neither he nor his colleagues were certified as specialists by the Supreme Court of South Carolina. For this violation, the Hearing Panel recommended that Respondent receive a Letter of Caution with a finding of minor misconduct and that he pay the costs of these proceedings. We agree in full with the Hearing Panel's findings and recommendations and hereby dismiss the first allegation and issue a Letter of Caution to Respondent as to the second allegation.

## FACTS

Prior to attending law school, Respondent worked in the real estate field for nearly thirty years. Respondent obtained his license to practice law in South Carolina in 2001. Since that time, he has worked at his own law firm, which has several offices and a total of five attorneys, including Respondent. Respondent primarily performs real estate closings, which is also the firm's predominant practice.

**Formal Charges.** The Office of Disciplinary Counsel (ODC) filed formal charges against Respondent in 2009 alleging the following misconduct:

i. Respondent engaged in, or attempted to engage in, direct, in-person solicitation of prospective clients in violation of Rule 7.3(a) by delivering coupons to realtors and lenders with the expectation that they would be passed on to persons known to be in need of legal services.

ii. Respondent published a website on the Internet promoting his legal services using forms of the words "expert" and "specialist" in violation of Rule 7.4(b).

**Hearing Panel.** The Hearing Panel conducted a hearing regarding the two allegations, where they considered the following evidence.

### First Allegation: Distribution of Discount Coupons.

At the hearing, Respondent testified that he began distributing discount coupons in 2005. The coupons provided discounts of $100 off for his legal services for those buying or refinancing property, or $50 off for those selling property. The regular charges for this work before the application of any discounts were also specified on the coupons. According to Respondent, he initially put the coupon only on his website, but realtors and lenders who were printing them out to give to clients started asking him for printed versions, so he printed them up as a paper coupon.

Respondent put the printed coupons into plastic display cases to give to realtors who wanted them, with the hope that they would put them in their office lobbies, and the majority of them did so. Respondent also put the display cases and coupons in various locations around the area so that people could pick them up, and he included them in newspaper advertisements, as well as made them available for download from his website. Respondent also occasionally incorporated the coupon into his brochures.

Respondent also mailed coupons directly to realtors and lenders with a cover letter. Respondent stated the realtors and lenders who received the coupons were not on his payroll and they were not under his supervision. He did not keep records of the number of coupons that he gave to each realtor and track their return, and he did not attempt to manage or control to whom the coupons were distributed. Respondent estimated that approximately one-half of one percent of the coupons printed were redeemed.

ODC asserted there was nothing wrong per se with issuing coupons; rather, ODC took exception to the method of delivery of the coupons and the intended recipients. ODC stated distributing a coupon through the internet or in a newspaper or some other manner of general distribution "is perfectly acceptable." ODC maintained that "Welcome Wagon" or "ValPak" distributions, which give out information from a variety of businesses, are also acceptable because the intended recipients were not selected based on "the fact that they are known to be in need of legal services."

In contrast, ODC argued, "[d]istribution of the coupon through realtors and lenders [was] done with the intent of reaching people who are known to be in need of legal services, people buying and selling homes." ODC further argued "that the intent of [Respondent] in sending the coupons to realtors and lenders was to have them personally deliver those coupons to the clients." ODC alleged this conduct violated Rule 7.3(a) of the RPC, which generally prohibits an attorney from making a direct, in-person solicitation for professional employment with a prospective client.

Respondent contended the coupons were simply advertising that was governed by the requirements of Rule 7.2 of the RPC as he had no control over what happened to the coupons once they were given to the realtors and lenders, and he did not violate Rule 7.3(a) as alleged by ODC.

**Second Allegation: Use of Forms of "Expert" & "Specialist."**

ODC's second allegation was that Respondent had used forms of the words "expert" and "specialist" to describe himself and two other attorneys in the biographical portion of his law firm's website when neither he nor his associates were certified as specialists by this Court. ODC asserted this conduct violated Rule 7.4(b), RPC, governing the Court's certification of specialists.

At the hearing, Respondent acknowledged that neither he nor the other two attorneys were specialists in any field certified by this Court. He further acknowledged that there is currently no certification available for the particular fields mentioned on his website.

After this allegation came up, Respondent immediately changed the disputed language to refer to his "experience" rather than his "expertise," and he also changed the wording of his associate's biographies to refer to their "concentration" or "emphasis" in certain fields of law, rather than their "specialization" in certain fields.

## LAW/ANALYSIS

ODC takes exception to the Hearing Panel's recommendation of dismissal of the allegation concerning Respondent's distribution of a discount coupon. Respondent maintains he committed no misconduct in this regard. He does not challenge the finding of minor misconduct and the issuance of a Letter of Caution for the allegation concerning his website.

■■■ "The authority to discipline attorneys and the manner in which the discipline is given rests entirely with this Court." *In re Tullis,* 375 S.C. 190, 191, 652 S.E.2d 395, 395 (2007). The Court "has the sole authority ... to decide the appropriate sanction after a thorough review of the record." *In re Thompson,* 343 S.C. 1, 10, 539 S.E.2d 396, 401 (2000). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard,* 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008).

■■■ A disciplinary violation must be proven by clear and convincing evidence. *In re Greene,* 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8, RLDE, Rule 413, SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

### (1) Discount Coupon & Rule 7.3(a).

■■■ ODC contends Respondent's distribution of the discount coupons to realtors and lenders violated Rule 7.3(a) of the RPC, Rule 407, SCACR, which provides in relevant part as follows:

A lawyer shall not by in-person, live telephone or real-time electronic contact solicit professional employment from a prospective client when a significant motive for the lawyer's doing so is the lawyer's pecuniary gain, unless the

person contacted: (1) is a lawyer; or (2) has a family, close personal, or prior professional relationship with the lawyer.

ODC asserts Respondent's purpose in sending the discount coupons to lenders and realtors was to target customers who were in need of legal services by using the third-parties to make direct contact with the clients, which he is prohibited from doing under Rule 7.3(a).

Respondent testified that before using the coupons he spoke to several attorneys that he knew, and they suggested that he review the Ethics Advisory Opinions, so he did and found what he referred to as "the Welcome Wagon opinions." Specifically, Respondent reviewed and relied upon Ethics Advisory Opinions 93–08 and 96–27, and he testified that he thought what he was doing was the same as in those cases.

In Ethics Advisory Opinion 93–08, issued in 1993, an attorney was approached by a corporation about becoming one of the sponsors included in a "Welcome Wagon" program. Essentially, a hostess would make appointments with people who had just moved to the area to greet them and make them aware of services from businesses in the area by presenting gifts, brochures, etc. The hostess was paid a nominal fee of $2.00 per sponsor for each presentation. The Ethics Advisory Committee concluded an attorney may advertise through a Welcome Wagon program without violating the RPC. The Committee commented that this did constitute advertising that would be subject to the restrictions of Rule 7.2, and "since some of the contacts involve solicitation, Rule 7.3 would apply in those cases." The Committee further commented that "[a]ny written materials would consequently have to satisfy the requirements of Rules 7.1, 7.2 and 7.3."

Ethics Advisory Opinion 96–27, issued in 1996, additionally addressed whether an attorney could include a discount coupon for his or her professional services as part of the Welcome Wagon presentation. The Committee concluded, "A discount coupon or an offer of a special discounted fee for a new client, while perhaps undignified, may not be a substantive violation of the rules of Professional Conduct, so long as it is not false or misleading," citing Rule 7.1. However, attorneys should not follow up with persons who did not respond to the

attorney's advertising material because that has the potential to violate Rule 7.3(b).

In 2007, sometime after Respondent had already been distributing his coupons, Ethics Advisory Opinion 07–09 came out, which addressed an attorney's proposal to issue discount coupons to prospective clients by providing them to mortgage loan originators and real estate agents.[1]  In that scenario, the mortgage loan originators and the real estate agents were going to personally give the coupons to homebuyers at the time the homebuyers were asked to choose a lawyer to close the real estate transactions.  The Committee stated, "The difference in this case is that the lawyer here knows that each prospective client will be in need of legal services in a particular matter, whereas the lawyer in [Ethics Advisory Opinion] 96–27 was giving a coupon to all new homeowners in case any of them might need legal services in the future."

The Committee stated disclaimer language would have to be included, which could be impractical for coupons: "Rule 7.3(d) also requires extensive specific language to be contained in '[e]very writing directed to someone known to be in need of legal services on a particular matter.'  Unless the coupon contains all the language required by subparts 1 through 3 of Rule 7.3(d), which does not seem practicable on a coupon, the coupons will violate this rule."  (Alteration in original.)

Respondent testified Opinion 07–09 did not come out until after the Commission's investigation of him began in 2006, and he thought this decision "seemed to be so inconsistent with the [Welcome Wagon] cases."  We agree and find that Opinion 07–09 does not present a correct interpretation of Rule 7.3(a).

The Supreme Court of the United States has concluded that a state may not categorically prohibit attorneys from soliciting clients for pecuniary gain by sending truthful and non-misleading communications to those known to be in need of legal services:

> [M]erely because targeted, direct-mail solicitation presents lawyers with opportunities for isolated abuses or mistakes does not justify a total ban on that mode of protected commercial speech.  See *In re R.M.J.*, 455 U.S. [191], at

---

1.  Respondent stated he was not the person who requested this opinion.

203, 102 S.Ct. [929], at 937 [71 L.Ed.2d 64] [ (1982) ]. The State can regulate such abuses and minimize mistakes through far less restrictive and more precise means, the most obvious of which is to require the lawyer to file any solicitation letter with a state agency, *id.*, at 206, 102 S.Ct. at 939, giving the State ample opportunity to supervise mailings and penalize actual abuses.

*Shapero v. Kentucky Bar Ass'n,* 486 U.S. 466, 476, 108 S.Ct. 1916, 100 L.Ed.2d 475 (1988).

In the current case, ODC made no allegation that Respondent's coupons were misleading or otherwise improper. Respondent indicated both the amount of the discount and the amount of the regular charges on his coupons, and he testified that he did, in fact, give the appropriate discounted rates to those who presented the coupons. Although Respondent attempted to send his coupons to a targeted audience of persons interested in real estate, not all of the persons who received his coupons were in need of legal services. However, whether or not the intended recipients were in need of legal services is irrelevant.

We agree with the Hearing Panel's findings that "[t]he coupons ... were distributed randomly by real estate agents and lenders, similar in fashion to the common practice of leaving business cards for distribution." Furthermore, "[b]ecause the lawyer is not physically present ..., there is no insistence upon immediate retention or 'importuning of the trained advocate.'" As Respondent testified, the realtors and lenders were not under his control and could have thrown away the coupons or let people take them like other business cards that were available for the public. Thus, there was no insistence upon immediate action thrust upon the recipients and we agree with the Hearing Panel that Respondent committed no misconduct in this regard and dismissal of the charge is proper.

### (2) Use of Forms of "Expert" & "Specialist" & Rule 7.4(b).

■ Rule 7.4(b) limits an attorney's use of *any* form of the words "expert" and "specialist" to avoid confusion with this Court's program for certifying specialists. The rule provides as follows:

A lawyer who is not certified as a specialist but who concentrates in, limits his or her practice to, or wishes to announce a willingness to accept cases in a particular field may so advertise or publicly state in any manner otherwise permitted by these rules. To avoid confusing or misleading the public and to protect the objectives of the South Carolina certified specialization program, any such advertisement or statements shall be strictly factual and *shall not contain any form* of the words "certified," "specialist," "expert," or "authority" except as permitted by Rule 7.4(d) [regarding admiralty practice].

Rule 7.4(b), RPC, Rule 407, SCACR (emphasis added).

At the panel hearing, Respondent's counsel argued that Respondent's use of forms of the words "expert" and "specialist" were meant to refer to Respondent's extensive experience in the real estate field before becoming an attorney, and to refer to the previous experience of two of his associates. Counsel argued Respondent did not mean to imply they were certified specialists and that the way the "words were used on the website was not written in such a way as it could possibly have been misconstrued or confused with the Bar's certified specialist program[.]"

Respondent's use of the words, as outlined in the report of the Hearing Panel, clearly violated Rule 7.4(b), which expressly prohibits use of "any form" of the words "expert" and "specialist." However, in mitigation, we note that Respondent immediately removed the disputed words from his website when they were challenged, and there is no evidence that anyone was actually misled or harmed by Respondent's use of the words on his website. Neither Respondent nor ODC has raised any challenges to the Hearing Panel's findings and conclusion with regard to this particular allegation. We agree with the Hearing Panel that Respondent violated Rule 7.4(b) and committed minor misconduct by using these terms improperly and hereby issue this Letter of Caution to Respondent to observe the provisions of Rule 7.4(b).

## CONCLUSION

It is clear from the transcript of the hearing in this matter that Respondent researched the Ethics Advisory Opin-

ions, that he was very cooperative with ODC, and that he made immediate efforts to make changes in his conduct when this disciplinary action arose. We agree with the Hearing Panel that dismissal of the allegation regarding distribution of the discount coupons is appropriate, and we issue this Letter of Caution, with a finding of minor misconduct, for Respondent's violation of Rule 7.4(b) for his inappropriate use of forms of the words "expert" and "specialist" on his website.

**DISMISSAL AND LETTER OF CAUTION.**

TOAL, C.J., WALLER, PLEICONES, BEATTY and KITTREDGE, JJ., concur.