709 S.E.2d 644

**In the Matter of Michael Hensley WELLS, Respondent.**

No. 26969.

Supreme Court of South Carolina.

Heard April 7, 2011.
Decided May 9, 2011.

Lesley M. Coggiola, Disciplinary Counsel, and Barbara M. Seymour, Deputy Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Kevin Mitchell Barth, of Florence, for Respondent.

PER CURIAM.

In this attorney disciplinary matter, the Commission on Lawyer Conduct ("Commission") investigated allegations of misconduct involving Michael Hensley Wells's ("Respondent's") use of a website, brochures, and telephone book advertisements to promote his law firm's services. The Office of Disciplinary Counsel ("ODC") filed Formal Charges against Respondent. A Hearing Panel of the Commission ("Hearing Panel") issued its Panel Report, finding Respondent had committed misconduct. A majority of the Panel recommended that this Court issue a Public Reprimand.[1] The Panel also recommended that this Court order Respondent to pay costs, pay a fine, and complete the Ethics School and the Advertising School of the Legal Ethics and Practice Program.

Neither Respondent nor the ODC has filed a brief taking exception to the Panel Report. We accept the Panel's recommendation. Accordingly, we issue a Public Reprimand and order Respondent to pay the costs of the disciplinary proceedings, pay a fine in the amount of $1,000, and complete the Ethics School and the Advertising School of the Legal Ethics and Practice Program administered by the South Carolina Bar.

## I. Factual/Procedural History

Respondent, who was admitted to the South Carolina Bar on April 24, 2001, owns and operates a law firm doing business under the name Coastal Law, L.L.C. This matter arises from the marketing practices used by Respondent's law firm as of January 2009. At that time, Respondent employed two associates, both of whom were admitted to practice in 2007. The law firm's marketing consisted primarily of a website, telephone book advertisements, and a firm brochure distributed at various public locations that included a mall kiosk.

---

1. One member of the Panel recommended an Admonition.

Following a full investigation, the ODC filed Formal Charges against Respondent on February 25, 2010, alleging seven matters of misconduct involving his law firm's advertising practices. In his Answer, Respondent conceded certain allegations, but asserted that he did not intend to violate the Rules of Professional Conduct.

On July 15, 2010, the Panel held a hearing on the Formal Charges. At the hearing, Respondent testified regarding the allegations of misconduct. Although he acknowledged the improper statements in his advertising material, he claimed it was an "honest mistake" and that he had not intended to be deceptive. He further explained that he had failed to oversee the creation of the advertisements. He also emphasized that he had corrected and revised the advertising materials after being apprised of the Rule violations. He maintained that he now reviews all of the firm's advertisements before they are disseminated. In addition, Respondent offered evidence of his good character.

On December 22, 2010, the Hearing Panel issued a report that was filed with the Commission the next day. In its report, the Panel found the following facts [2] regarding the allegations of misconduct:

### Allegation A

In his advertising materials, Respondent included false and misleading statements regarding: his experience and his associates' experience; the firm's areas of practice and past case results; the assignment of cases among the attorneys in the firm; the firm's reputation; the firm's office locations; and the foreign language ability of the firm's employees.

In terms of his experience, Respondent included a statement on his website and in his firm brochure that he had "worked in the legal environment for over twenty years." Although Respondent had worked as a clerk for a law firm while in college and law school, he had only actually practiced

---

2. Neither party filed briefs with this Court. Consequently, the parties are deemed to have accepted the Panel's findings of fact, conclusions of law, and recommendations. *See* Rule 27(a), RLDE, of Rule 413, SCACR ("The failure of a party to file a brief taking exceptions to the report constitutes acceptance of the findings of fact, conclusions of law, and recommendations.").

law for about seven years when these materials were disseminated.

Respondent also overstated the experience of his associates on his website. At the time the website was published, the firm's two associates had been admitted for less than one year, yet the website referred to the firm's "numerous trained and experienced attorneys." The website also included phrases describing the firm's attorneys as "thoroughly familiar with the local court system", "highly skilled", possessing "wide-ranging knowledge", and having a "deep personal knowledge of the courts, judges, and other courthouse personnel."

Regarding the firm's areas of practice and the types of cases handled by the attorneys, Respondent's website included a statement that "our attorneys handle all types of legal matters in state and federal court in South Carolina" when, in fact, that was not the case. The website also stated that the firm represents clients "in every level of the South Carolina state court system", which was not true.

Respondent's website also stated that "[e]ach attorney with Coastal Law Firm focuses his or her practice exclusively on one area of the law [thus] each attorney is deeply familiar with the law and procedural issues related to their clients' cases." However, Respondent listed at least twenty-seven distinct practice areas on his website even though only three attorneys (including himself) were employed with the firm.

Respondent's website further stated that the firm had served clients in constitutional law, civil rights, ethics and professional responsibility, and toxic torts. No lawyer in the firm had actually handled any matters in those areas; however, they were willing to accept such cases.

Additionally, Respondent's website contained a page entitled "Consumer Protection and Products Liability Lawyer." The page claimed that the firm has "a history of winning [products liability] cases" and that it employs "defective products liability lawyers" who "understand how to deal with both corporations and insurance companies and have a history of winning cases for our clients." On another page on the website, Respondent stated that "At Coastal Law, our ... product recall lawyers understand what is required in filing a medical injuries claim for manufacturer negligence in producing a

hazardous drug or product leading to a dangerous product recall. We can aggressively pursue your legal rights against negligent corporations that may have introduced a product that damaged your health." Neither Respondent nor any lawyer in his law firm had ever handled a products liability matter.

In terms of the firm's office locations, some of Respondent's telephone book advertisements stated that the firm had offices in Georgia and Florida. At the time, Respondent had a referral arrangement with firms located in those states and had plans to merge his firm with another South Carolina lawyer, who had offices in Georgia and Florida. Respondent's firm, however, never actually operated offices in those states.

With respect to the foreign language ability of the firm's employees, Respondent's advertising materials included the phrase "We Speak Spanish" written in Spanish. None of the lawyers in the firm spoke Spanish. Only part of the time when these advertisements were published did the firm employ a staff member who spoke Spanish. The inclusion of "We Speak Spanish" in Respondent's advertising, particularly at times when no one in the office spoke Spanish, was misleading as it implied that the firm employed Spanish-speaking attorneys.

As to the firm's reputation, Respondent's website included a number of statements that could not be factually substantiated such as the firm "developed a reputation over the years for outstanding results" and the firm is "recognized as an established, experienced, and reputable local Myrtle Beach law firm." Although Respondent admitted at the hearing that the inclusion of this language was a "mistake" as his law firm had not been identified as a leading law firm or received special recognition, he claimed it was never his "intention to deceive."

### Allegation B

In his advertising materials, Respondent improperly compared his law firm's services to other law firms in ways that could not be factually substantiated with statements such as "best attorney available", "most effective legal services", and "best services possible." Respondent acknowledged that it

was inappropriate to make these comparisons to other lawyers.

### Allegation C

Although Respondent filed his telephone book advertisements with the Commission on Lawyer Conduct in compliance with Rule 7.2(b), he admitted that he did not do so with his website or firm brochure.

### Allegation D

Respondent admitted that some of his telephone book advertisements listed only the law firm name and not the name of a lawyer that was responsible for the content of the advertisements.

### Allegation E

Respondent admitted in his Answer that his firm brochure characterized the quality of his firm's legal services for criminal defense clients as "tough criminal defense representation." He also admitted that his website characterized his firm's attorneys as: "highly skilled at obtaining bonds for their clients"; "dedicated attorneys who provide excellent legal advice"; "maintaining a high degree of professionalism" in real estate matters; and "intelligent", "competent", and "full service."

### Allegation F

Respondent admitted that his telephone book advertising and website included statements regarding contingent fee arrangements, including the following statements: "no fee until you receive money"; "no fees up front to handle your personal injury or wrongful death case"; and "your cost is nothing unless we w in." Respondent, however, failed to disclose whether the client would be liable for any expenses in addition to the fee or whether the percentage of the contingency fee would be computed before deducting the expenses.

### Allegation G

Respondent's website referred to the firm's "expertise" in personal injury matters and the firm's "expert nursing home litigation advisors." The website and firm brochures also

stated that the firm "specializes in several areas of law." Respondent, however, admitted that no one in his firm was a certified specialist in any area of law.

## Hearing Panel's Findings of Misconduct

The Hearing Panel found that by his conduct, Respondent was subject to sanctions for violating the following South Carolina Rules of Professional Conduct (RPC) of Rule 407, SCACR: Rule 7.1(a) (communications concerning a lawyer's services that contain "a material misrepresentation of fact or law, or omits a fact necessary to make the statement considered as a whole not materially misleading"); Rule 7.1(b) (communications concerning a lawyer's services that are "likely to create an unjustified expectation about results the lawyer can achieve, or states or implies that the lawyer can achieve results by means that violate the Rules of Professional Conduct or other law"); Rule 7.1(c) (communications concerning a lawyer's services that compare "the lawyer's services with other lawyers' services, unless the comparison can be factually substantiated"); Rule 7.2(b) ("A lawyer is responsible for the content of any advertisement or solicitation placed or disseminated by the lawyer and has a duty to review the advertisement or solicitation prior to its dissemination to reasonably ensure its compliance with the Rules of Professional Conduct"; failure to file advertisements with the Commission on Lawyer Conduct) [3]; Rule 7.2(d) ("Any communication made pursuant to this Rule shall include the name and office address of at least one lawyer responsible for its content."); Rule 7.2(f) ("A lawyer shall not make statements in advertisements or written communications which are merely self-laudatory or which describe or characterize the quality of the lawyer's services; provided that this provision shall not apply to information furnished to a prospective client at that person's request or to information supplied to existing clients."); Rule 7.2(g) ("Every advertisement that contains information about the lawyer's fee shall disclose whether the client will be liable for any expenses in addition to the fee and, if the fee will be a percentage of the recovery, whether the percentage will be computed before

---

3. Respondent's advertisements were subject to filing pursuant to Rule 7.2(b), which was amended effective October 1, 2005. As of June 28, 2010, the rule has been amended to eliminate this filing requirement.

deducting the expenses."); and Rule 7.4(b) [4] (use of the words "expert" and "specialist" in advertisements is prohibited where a lawyer is not a certified specialist).

## Aggravating and Mitigating Circumstances

The Hearing Panel took into consideration the following mitigating circumstances: (1) Respondent's character evidence; (2) the absence of any prior disciplinary history; (3) Respondent's acknowledgement of wrongdoing; and (4) Respondent's remorse and willingness to take remedial action. In aggravation, the Panel took into consideration the seriousness of Respondent's misconduct, in particular the dishonest nature of the conduct, and the fact that these charges represented a pattern of multiple offenses.

## Hearing Panel's Recommended Sanction

Two members of the Hearing Panel recommend the sanction of a Public Reprimand. The remaining member of the Hearing Panel recommended the sanction of an Admonition. Additionally, all members of the Hearing Panel recommended that Respondent be ordered to pay the costs of the proceedings, be fined an appropriate amount, and be required to complete the Ethics School and the Advertising School of the Legal Ethics and Practice Program within a period of six months from the date of this Court's order.

## II. Discussion

This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough review of the record. *In re Welch*, 355 S.C. 93, 96, 584 S.E.2d 369, 370 (2003). "The Court is not bound by the panel's recommendation and may make its own findings of fact and conclusions of law." *In re Hazzard*, 377 S.C. 482, 488, 661 S.E.2d 102, 106 (2008).

"A disciplinary violation must be proven by clear and convincing evidence." *In re Greene*, 371 S.C. 207, 216, 638 S.E.2d 677, 682 (2006); *see also* Rule 8, RLDE, Rule 413,

---

4. Although the Panel Report references Rule 7.4(c), we believe Rule 7.4(b) is the proper rule as Rule 7.4(c) addresses advertisements regarding patent and trademark attorneys.

SCACR ("Charges of misconduct or incapacity shall be established by clear and convincing evidence, and the burden of proof of the charges shall be on the disciplinary counsel.").

The parties, by not filing briefs, have accepted the findings of fact, conclusions of law, and recommendations of the Hearing Panel. Thus, this Court must determine whether the recommended sanction is appropriate.

We agree with the Panel's recommended sanction of a Public Reprimand as it is consistent with this Court's decisions regarding similar professional misconduct. *See In re Schmidt,* 374 S.C. 167, 648 S.E.2d 584 (2007) (holding that Public Reprimand was the appropriate sanction where attorney: published newspaper advertisements that failed to disclose the location, by city or town, where he principally practiced law; used advertisements containing the word "specialist", when in fact he was not a certified specialist; sent solicitation letters that failed to disclose where he principally practiced law, included the words "expert" and "expertise", were not filed with the Commission, and did not disclose a list of persons to whom the letters were sent; and sent a client letter containing statements that were not verified); *In re Mitchell,* 364 S.C. 606, 614 S.E.2d 634 (2005) (finding Public Reprimand was the appropriate sanction where attorney, who had previously received a letter of caution, continued to use letterhead that contained misleading information regarding his solo practice); *In re Pavilack,* 327 S.C. 6, 488 S.E.2d 309 (1997) (concluding Public Reprimand was the appropriate sanction where attorney aired two misleading advertisements); *cf. In re Anonymous Member of the South Carolina Bar,* 386 S.C. 133, 687 S.E.2d 41 (2009) (issuing a letter of caution with a finding of minor misconduct where attorney's use of the words "expert" and "specialist" on his firm's website violated Rule 7.4(b) of the Rules of Professional Conduct); *In re Creson,* 338 S.C. 157, 526 S.E.2d 231 (2000) (finding a Public Reprimand was warranted for attorney who failed to remove from his South Carolina letterhead a misleading statement indicating that he was admitted to practice in Georgia but had been suspended from the practice of law in that state).

Here, Respondent was clearly cooperative and remorseful as evidenced by his testimony before the Hearing Panel and

this Court. Respondent also has no prior disciplinary history and has revised his advertising materials in accordance with the suggestions made by the ODC. Moreover, according to Respondent, the advertising materials were corrected almost immediately after he received the ethics complaint in January 2009.

In terms of the website, Respondent testified that the website was "actually up" for only three to four months as it became operational at the end of 2008 and was taken down shortly after he received the ethics complaint in January 2009. Respondent also testified that he "pulled all the brochures and business cards" from the mall kiosk that had been set up for the firm's advertisements.

Finally, Respondent stated that he now uses a "checklist" compiled by the ODC to help attorneys with their advertisements. He further explained that he has "scaled" back on the statements in his advertisements as to the firm's areas of practice and the potential case results.

In addition to the above-outlined sanction, we also order Respondent to pay a fine of $1,000 and the costs of the disciplinary proceedings.[5] *See In re Thompson,* 343 S.C. 1, 13, 539 S.E.2d 396, 402 (2000) ("The assessment of costs is in the discretion of the Court."); Rule 27(e)(3), RLDE, of Rule 413, SCACR ("The Supreme Court may assess costs against the respondent if it finds the respondent has committed misconduct."); Rule 7(b)(6), RLDE, of Rule 413, SCACR (stating sanctions for misconduct may include the "assessment of the costs of the proceedings, including the cost of hearings, investigations, prosecution, service of process and court reporter services"); Rule 7(b)(7), RLDE, of Rule 413, SCACR (providing that sanctions for misconduct may include assessment of a fine).

Moreover, given the extent of Respondent's improper advertisements, we order Respondent to complete the Ethics School and the Advertising School of the Legal Ethics and Practice Program.

---

5. The Commission claims it has incurred $1,005.24 in these proceedings.

## III. Conclusion

Based on the foregoing, we conclude that Respondent has committed misconduct in the respects identified by the Hearing Panel. We further find the Hearing Panel's recommended sanctions are warranted under the circumstances. Accordingly, we issue a Public Reprimand and further order Respondent to pay the costs of the disciplinary proceedings, pay a fine in the amount of $1,000, and complete the Ethics School and the Advertising School of the Legal Ethics and Practice Program administered by the South Carolina Bar within six months of the date of this order.

**PUBLIC REPRIMAND.**

TOAL, C.J., PLEICONES, BEATTY, KITTREDGE and HEARN, JJ., concur.