# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Anonymous Applicant for Admission to
the South Carolina Bar, Applicant.

Appellate Case No. 2022-000139

---

Opinion No. 28100
Heard June 7, 2022 – Filed June 29, 2022

---

## PETITION FOR ADMISSION GRANTED

---

Barbara M. Seymour, Esquire, for Applicant.

---

**PER CURIAM:** Applicant submitted an application for admission to the practice of law in South Carolina. Following a hearing to determine whether Applicant is qualified for admission, the Committee on Character and Fitness (Committee) issued a report and recommendation on November 15, 2021, finding Applicant possesses the requisite character and fitness to practice law. Although we accept the Committee's recommendation and grant Applicant's petition for admission, we are troubled by Applicant's lack of candor in his law school application and his subsequent misrepresentations on social media. We therefore find a one-year delay in admission is appropriate and hold that Applicant is not eligible to be admitted until November 14, 2022—one year from the issuance of the Committee's report and recommendation.

## I.

On his law school application, Applicant responded "no" when asked if he had "ever been charged, arrested, formally accused, or convicted of a crime other than a minor parking or traffic violation." Additionally, he respondent "no" when asked if he had "ever been subjected to disciplinary action by any of the educational institutions" he attended. Those responses were not truthful.

## A. Minor in Possession of Alcohol

After being admitted to law school, Applicant disclosed to the law school sometime in 2019 that he had been charged as minor in possession of alcohol. On December 21, 2020, Applicant amended his application to explain the charge. According to Applicant's explanation, during his senior year in high school, he and "many other students" from his school were involved in an "incident" that resulted in him being ticketed as being a minor in possession of alcohol (MIP).[1] Applicant explained the charge was "dismissed without any punishment or fine," but the high school required all students involved to participate in community service. Applicant informed the law school that he failed to disclose this criminal charge because he "had forgotten it happened" due to the "minimal punishment" he received. Applicant was seventeen years old at the time of the incident.

In testifying about this incident during his hearing before the Committee, Applicant reported that he was involved in underage drinking at a party when the police arrived due to noise. Applicant testified he received a ticket for MIP at that time, and he thereafter hired an attorney and was found not guilty. Nevertheless, he was required to complete community service by his high school.

## B. Hindering Police

In August 2020, Applicant disclosed to the law school that he had been charged with hindering police when he was sixteen years old.[2] According to Applicant, this was a "minor altercation" with an officer of a municipal police department that occurred in October 2010. Applicant stated he was attending a gathering at a home where underage drinking was taking place; however, Applicant denied drinking alcohol when he informed the law school of this incident. Applicant stated that a concerned neighbor knew the homeowner was not in town and called the police. When the police arrived, Applicant fled because he "was worried about getting in trouble." Applicant claimed that "everyone who was at the 'party' or gathering began to run." Applicant further claimed he left the house before the police arrived

---

[1] *See* S.C. Code Ann. § 63-19-2450 (2010 & Supp. 2021) (providing a person under the age of twenty-one who knowingly possesses alcoholic liquors is guilty of a misdemeanor).

[2] *See* Sullivan's Island, S.C., Code § 14-3 (2021) (prohibiting any person from hindering or interfering with any officer or employee of the police department in the discharge of official duties).

at the front door of the home to question the homeowner.  Applicant stated his mother picked him up, but the police found out his name and called his parents.  Eventually, Applicant's parents took him to the police station where he received a ticket for hindering police.  Applicant stated he was ordered to perform sixty hours of community service and the ticket was expunged.

The police report provided a much different account of what occurred.  According to that report, an officer saw a car turn into the driveway of the residence.  The officer was familiar with the residence because the owner had informed the officer of problems with underage parties at her home and asked the officer to check on the home if cars were present while hers was not.  Not seeing the owner's car at the residence, the officer stopped to speak with the occupants of the car.  The officer found four people in the car, all of whom had been drinking.  As the officer administered field sobriety tests to one individual, Applicant ran away.  One of the other individuals provided the police with Applicant's name.  The police called Applicant's parents, who agreed to take Applicant to the police station, where he received a ticket for hindering police.

During the hearing before the Committee, Applicant's recollection of what occurred more closely resembled the police report than what he previously reported to the law school or in his application for bar admission.  Applicant testified that the police arrived as the car in which he was a passenger pulled up to the house.  The police officer approached the vehicle and began asking questions about why Applicant and his companions were there.  Applicant testified he "was terrified of getting in trouble" because he was being recruited to play football after high school.  Applicant testified he ran and called his mother, who picked him up and took him home.  Later, the police called Applicant's mother, who took Applicant to the police station where he received a ticket for hindering police.  In contrast to what he reported to the law school, Applicant admitted to the Committee that he had been drinking at the time of the incident.

## C. Careless Driving

In December 2020, Applicant amended his law school application to reveal he received a uniform traffic ticket for careless operation of a vehicle in May 2012.  Applicant told the law school he had "NO CLUE" where the ticket was from, despite a "vague" recollection of having received a warning, and that he intended to dispute the ticket.

On his bar application, Applicant stated the May 2012 citation was related to his failure to stop at a stop sign. Applicant further explained he appeared in municipal court, where he was found guilty and paid a $120 fine.

At the hearing, Applicant informed the Committee that he believed he failed to stop for a stop sign or rolled through a stop sign in his neighborhood, but he did not have a firm recollection of the events giving rise to the ticket. Applicant explained he disclosed the ticket after he obtained his driving record in the course of completing his bar admission application and remembered the ticket.

## D. Fraternity Prank

Shortly before the Committee hearing, Applicant amended his bar application to disclose that he had participated in a fraternity prank as an undergraduate. "As part of a tradition, [he] and the other sophomore members of the fraternity took bikes from a dormitory and rode them back to the fraternity house as a prank." They were caught, and the entire fraternity was reprimanded. Additionally, the fraternity was required to complete community service. Applicant's undergraduate institution had no record of the incident when Applicant made a request to the university for information about it.

## E. Applicant's Testimony Before the Committee

During the hearing before the Committee, Applicant testified he did not inform the law school about his arrests for MIP and hindering police because he "was under the impression they were off [his] record and they were expunged." Applicant admitted this was a mistake on his part because the law school application unambiguously required disclosure of expunged offenses.[3] Applicant also acknowledged that the law school gave him numerous reminders "about the importance of disclosures," and he realized he needed to disclose those two offenses. However, Applicant testified he "made the decision to disclose just the MIP and not the hindering police because [he] was certain as to what exactly the MIP was and [he] needed to get a little bit more information on the hindering police." Applicant acknowledged this was "not a good excuse" and that he should

---

[3] Specifically, Applicant acknowledged the law school application directed disclosure of all instances "including instances that have been expunged by order of the court, including juvenile offenses."

have disclosed both at the same time.  Applicant claimed he was "very nervous" and "embarrassed" as well.

At the hearing, Applicant apologized for his failure to disclose these incidents to the law school when he applied.  He stated he deeply regretted this failure and considered it an "inexcusable mistake."  Applicant assured the Committee that he took full responsibility for his mistakes and intended to learn from them.

In considering Applicant's character and fitness to practice law, the Committee noted the relatively minor nature of Applicant's infractions, most of which occurred about a decade ago while Applicant was young.  However, the Committee also acknowledged Applicant's failure to disclose these infractions in his law school application was both more recent and more troubling.  The Committee noted Applicant accepted full responsibility for his prior misconduct and appeared genuine in his regret for failing to disclose the matters.  Additionally, the Committee found Applicant's disclosure—albeit late in the process—of the fraternity prank as an undergraduate student demonstrated "a sincere attempt to be completely candid with the Committee regarding his past misdeeds."  In considering the totality of the information available, the Committee ultimately concluded Applicant possesses the requisite character and fitness to practice law.

### F. LinkedIn Profile

Following the hearing before the Committee, an additional matter involving dishonesty came to light.  During Applicant's third year of law school, he worked as a law clerk with a local law firm.  In January of that year, Applicant accepted an offer to become an associate attorney with the firm pending his admission to the bar.  While awaiting the results of the bar examination, Applicant began working for the firm as a law clerk.  In October 2021, this Court notified Applicant he achieved a passing score on the bar examination but remained ineligible to be admitted because the Committee had not yet completed its investigation.  Upon receiving the Court's letter, Applicant updated his publicly-available LinkedIn profile to reflect that he was employed as an associate attorney at the law firm.  Applicant has never been admitted to practice law in this jurisdiction or any other.[4]

_____

[4] Notwithstanding his false representations online, there is no evidence any member of the public ever solicited legal services from Applicant or that Applicant ever engaged in the unauthorized practice of law.  *See* S.C. Code Ann. § 40-5-310 (2011 & Supp. 2021) (providing a person who engages in the unauthorized practice of law in this state is guilty of a felony and subject to a $5,000 fine and five years

"South Carolina, like other jurisdictions, limits the practice of law to licensed attorneys." *Brown v. Coe*, 365 S.C. 137, 139, 616 S.E.2d 705, 706 (2005). "The goal of the prohibition against the unauthorized practice of law is to protect the public from incompetent, unethical, or irresponsible representations." *Id*., 365 S.C. at 139, 616 S.E.2d at 707 (citation omitted). This Court's regulation of the practice of law "is not for the purpose of creating a monopoly in the legal profession, nor for its protection, but to assure the public adequate protection in the pursuit of justice, by preventing the intrusion of incompetent and unlearned persons in the practice of law." *Boone v. Quicken Loans, Inc*., 420 S.C. 452, 459-60, 803 S.E.2d 707, 711 (2017).

When questioned by this Court about his decision to hold himself out as an attorney untruthfully, Applicant explained he was proud to learn he had passed the bar examination, and in that excitement, he changed his LinkedIn profile to reflect his achievement. Applicant admitted that, at the time he updated his profile, he was employed as a law clerk, that he was neither an associate nor an attorney, and that his representation on LinkedIn was false. Applicant acknowledged that his actions jeopardized not only his own prospects for bar admission, but also risked the law firm's reputation and could have misled members of the public.[5]

In maintaining the content of his LinkedIn profile, Applicant was, at all times, responsible for all the information incorporated in his profile, including ensuring all content was accurate and truthful.[6] Applicant's actions in holding himself out as

---

in prison). To the extent any member of the public had been misled, the outcome of this matter would almost certainly be different.

[5] Applicant submitted affidavits from the chief operating officer and the current and former managing members of the law firm, all of which described Applicant's role with and work for the firm. Based on these affidavits and Applicant's sworn testimony to this Court, we conclude Applicant has consistently received appropriate supervision by the firm's attorneys. *See* Rule 5.3, RPC, Rule 407, SCACR (requiring supervisory attorneys to take reasonable measures to ensure that non-lawyers in the firm act in a way that is compatible with the Rules of Professional Conduct).

[6] This includes correcting, deleting, or disclaiming any false or misleading entries or endorsements made by third parties relating to an applicant or lawyer's practice of law. *Cf*. Rule 7.1, RPC, Rule 407, SCACR (prohibiting false, misleading, or deceptive communications about a lawyer or a lawyer's services); *In re*

an attorney without having been admitted to practice law raises serious questions about whether Applicant possesses the requisite honesty, trustworthiness, and fitness to practice law. *See* Rule 402(c)(2), SCACR (establishing an applicant must be "of good moral character" to be eligible for admission to practice law). When considered alongside Applicant's history of non- and half-disclosures on his law school application, this most recent instance of misleading conduct is particularly troubling.

## II.

An applicant who provides false or misleading information in a bar application or related attachments, such as an applicant's law school application, is subject to any action this Court deems appropriate under the circumstances. Rule 402(e), SCACR (defining "false or misleading information" as including "the knowing omission of material information by an applicant"). "This may include, but is not limited to, finding the applicant in contempt, finding the applicant unfit for admission, prohibiting the applicant from using the results of the examination for admission, and/or preventing the applicant from reapplying for admission for up to five (5) years." *Id.*

At the hearing before the Committee, Applicant admitted the law school application unambiguously required disclosure of the MIP incident, the hindering police incident, and the careless and negligent driving incident. Applicant acknowledged the law school reminded him of the importance of accurate and complete disclosures, that he realized the need to disclose these incidents, and that he failed to do so. In light of these admissions, we find Applicant's failure to disclose these incidents on his law school application was false and misleading as contemplated by Rule 402(e), SCACR. Additionally, at the hearing before this Court, Applicant acknowledged that his conduct in misrepresenting his position with the law firm on LinkedIn was false and misleading. We turn now to the issue of what outcome is appropriate in light of Applicant's sustained pattern of false and misleading conduct.

A lawyer is not simply a representative of clients; he or she is also an officer of the legal system and has special responsibility for the quality of justice. Pmbl. at [1], RPC, Rule 407, SCACR. "A lawyer's conduct should conform to the requirements of the law, both in professional service to clients and in the lawyer's business and

---

*Anonymous*, 386 S.C. 133, 687 S.E.2d 41 (2009) (applying lawyer advertising rules to law firm website content).

personal affairs." *Id*. at [5]. "A lawyer should be one whose record of conduct justifies the trust of clients, adversaries, courts[,] and others with respect to the professional duties owed to them." App. B at (5), Pt. IV, SCACR. To protect the public and the system of justice, this Court takes seriously its duty to evaluate the character and fitness of applicants for admission to the practice of law. S.C. Const. art. V, § 4 (providing this Court shall have jurisdiction over the admission to the practice of law and the discipline of persons admitted).

In recent years, this Court has been presented with a growing number of bar applicants who omit from their law school applications information that is plainly required to be disclosed. Despite warnings in law school of the consequences of nondisclosure, too many applicants never amend, or never fully amend, their law school applications to include all relevant matters. Predictably, the issue of nondisclosure often resurfaces at the time an applicant submits a petition for admission to practice law. Often, the undisclosed conduct itself would not necessarily have disqualified an applicant from admission to law school, but false and misleading nondisclosures most certainly impact this Court's evaluation of an applicant's character and fitness to practice law. When applicants are confronted about incidents they failed to disclose on their law school applications, this Court and the Committee receive a familiar refrain of unpersuasive excuses.[7] Although this Court imposes repercussions for these nondisclosures in individual cases, bar admissions matters are nonpublic, and this Court's decisions in those matters are not published. Accordingly, too many potential applicants continue to interpret application instructions and early warnings in law school of the consequences of nondisclosure as empty threats.

Additionally, social media has increased in prevalence such that it now affects nearly every aspect of modern life, including the practice of law. Indeed, the most recent technology report published by the American Bar Association indicates that, nationally, up to 96% of law firms and 81% of individual attorneys use social media for professional purposes. Allison C. Shields Johs, 2021 Websites & Marketing, ABA TECHREPORT (Nov. 17, 2021), https://www.americanbar.org/groups/law_practice/publications/techreport/2021/webmarketing/. Of the attorneys who maintain individual social media profiles for professional purposes, 90% of those attorneys use LinkedIn specifically. *Id*. Accordingly, it is imperative that bar applicants and attorneys alike remain keenly aware of their ethical obligations

---

[7] These excuses range from "I forgot," to "I couldn't find any records," to "I thought I didn't have to disclose it because it was sealed/expunged," to inappropriately expansive interpretations of "minor parking or traffic violations."

relating to social media content, particularly as it relates to ensuring no information or communication is false, fraudulent, or misleading in any way.

In light of the concerning increase in nondisclosures this Court has seen in recent years and the growing prevalence of social media, today we take the unusual step of publishing our decision in this case while allowing Applicant to remain anonymous. Our goal in doing so is to warn potential law students, law schools, and bar applicants of the serious consequences of nondisclosure and to encourage law school applicants to completely and fully disclose all required information at the time their applications are first submitted. Now that applicants will have the benefit of this published decision, we caution that future nondisclosures and misleading statements will not be viewed with any degree of leniency and may result in this Court's outright denial of admission to practice law.

## III.

Although we acknowledge that most of Applicant's interactions with law enforcement were relatively minor and occurred many years ago when Applicant was a teenager, we cannot overlook the fact that Applicant knowingly failed to timely and fully disclose required information on his law school application, and that this series of nondisclosures occurred within the past four years. Additionally, within the past year, Applicant affirmatively misrepresented his licensure status on his LinkedIn profile. This most recent incident represents a troubling continuation of Applicant's pattern of untruthfulness.

Nevertheless, during the hearing before this Court, Applicant admitted his misconduct, took full responsibility for his failures, and appeared genuinely contrite. Additionally, Applicant submitted affidavits from various members of his employing law firm, all of whom remain steadfast in their endorsements of Applicant and commitments to provide him continuing support and mentorship.

Accordingly, we grant Applicant's petition for admission but find he is not eligible to be admitted to the practice of law before November 14, 2022—one year from the issuance of the Committee's report and recommendation. Applicant is reminded that until such time that he has been admitted to the practice of law, he is under a continuing obligation to keep his bar application current and must update responses whenever there is an addition or change to information previously filed with the Clerk. *See* Rule 402(d)(5), SCACR.

**PETITION FOR ADMISSION GRANTED.**

**BEATTY, C.J., KITTREDGE, HEARN and FEW, JJ., concur.  JAMES, J., not participating.**